move to the third case this morning U.S. v. Davis. Mr. Hills and Ms. Greenwald, Mr. Hills you may proceed. Thank you. Good morning. May it please the court. I'm Daniel Hillis. I'm with the Gaule requires a district court to correctly calculate the guideline range when imposing sentence. Here, by virtue of USSG 5D 1.2A1 and the requirement that all terms of supervised release be imposed concurrently and that's at 18 U.S.C. 3624E, the guideline range for Mr. Davis for his multiple counts of conviction was two to five years of supervised release. The district court wrongly determined that the range was six to 15 years of supervised release. It did that by aggregating the terms of supervision, adding the three counts of conviction together to get that range. The government has confessed error in this case. We appreciate that. That's at government page nine. So we believe the only contested issue at this point is the scope of remand. And in this case, where the government says that it should be a limited remand, Mr. Davis would like and believes that it is appropriate to order a full remand. The reason why we believe a full remand is proper is because the record shows that the district court employed this scaled approach at sentencing when determining the total punishment. The judge gave a lengthy 360-month prison sentence. And of course, that is below guidelines and it is lower than what the government asked for. It's considerably below the government wanted, 45 years, right? Yes, so this part we're good with. So what reason is there to think that the district court hadn't settled on the sentence that he thought was the appropriate sentence of imprisonment? I don't mean supervised release. Right, so the appropriate term of imprisonment, the judge regarded as less than what the government wanted, less than what the guidelines wanted, and was therefore trying to now synthesize the total punishment. The amount of imprisonment was 360, but that was with the view that there had to be a term of supervised release that should be imposed here. But he also says, does he not, I mean, he's talking to people about this, and he makes a statement, certainly nothing less than 360 months is warranted. So I don't see how you get out of that a signal that the district court might go below that if the supervised release term were different. It's hard to know what he would do had he the correct information, so certainly he makes that statement. We don't seek to get around that. It's in the print. We accept what it is. It's just how do you reach the conclusion about what the right answer is if you have the wrong integers? It's kind of a math problem in some regards. If you don't have the right factors, then you're not considering the right information, and the result is that. Mr. Hillis, could he go above 30 years? You know, would it be appropriate for the district judge to say, you know, I thought I was giving a five-year supervised release, but I miscalculated, so I'm going to give him two years supervised release, but I think 35 years is the right amount of time that this person should spend under some form of surveillance, so I'm going to sentence him to 33 years in jail. Would you concede that he could do that? I think that's a possibility, Judge Kirsch, but it's going to raise the prospect of vindictive sentencing, so we think that's best avoided by the district court. The district court can consider any number of factors when deciding the sentence upon remand, such as aging out. That's a phenomenon that's well-known by criminologists and sociologists. There can be things that tilt the sentence dramatically lower or somewhat lower, whatever the case may be, but yes, we accept that if the judge can go higher, he can go lower, he can stay the same, and my client is aware of that. My client simply would like the opportunity to go in front of the judge with the correct information and have the judge impose a sentence based on accurate information as opposed to misinformation, and so it is due to that error that we believe with the relatively low cost of a full resentencing, so Maureen is going to... Well, it's not a low cost to these victims. It's just not, not in this case. Oh, so? Well, you suggest that the government not put on the victims or not seek new victim statements from the victims. Of course, they could do that at their own risk, but there's not a no cost to these, to remanding for a full resentencing. I think this... It's also judicial economy and judicial resources and things like that, especially when a judge is clear and a judge goes so far below the guidelines. It was just an observation from me, but I don't think there's a no or very low cost to remanding for a full resentencing. Well, Judge, I accept the Supreme Court at its word in Molina Martinez, where it says that a remand for a full resentencing is a relatively low cost proposition. Now, it may be measured against the expense of trial. Nevertheless, this is what the Supreme Court said in allowing for a full remand for resentencing, so I'm not one to quibble with good authority, and the Supreme Court, I think, provides it. Not to mention, Judge Easterbrook's astute observation about hanging the bird up at the Supreme Court is ill-advised, so I think that we should follow... Yeah, but there's different, but of course, there's different, there's different facts, right? In a felon in possession case, remand for a 10-minute resentencing hearing is totally different than a kidnapping sex assault case. You'd agree, you'd have to agree with me there. I mean, that, that, there's, there's significant differences there. Right, but the relative cost, I guess, is being measured by what evidence the government would present, and so I don't know if the government would choose to present more evidence, less evidence. The record is what it is. The government could come in with more, but I doubt that it would be necessary, especially when the judge has previously handled the sentencing hearing. It would seem like overkill in my view, and it seems like we're building up a bit of a false prospect. Well, that's a fair point. To say that this would be... That's a fair point. So I have nothing further to offer, and I would reserve the rest of my time for rebuttal. Thank you, Mr. Gillis. Ms. Greenwald? Good morning, your honors. May it please the court. I'd like to begin by correcting something. The guideline range here was 360 months to life. That was at the record in the appendix 11 to 14. It's in the PSR. So the judge gave a guideline sentence, but the judge gave the lowest possible guideline sentence, and in doing that, the court expressly found that given the viciousness of the attack and the horrible circumstances of this case, that a below guideline sentence was not justified. So moving on from that factual point, I would say that this court has made clear in numerous cases, Wiley, Teague, Manifeld, that a limited remand to correct the terms of supervised release alone is warranted when the district court's reasoning convinces this court that the rest of the sentence would not change, and that is this case. The court was absolutely spent at length justifying this 360-month bottom-of-the-guideline-range sentence, and in doing so, it relied in no way on the supervised release term imposed, at least not expressly and not by anything in its rationale. As I mentioned, the court expressly made clear that it would not go below a guideline sentence because of the seriousness of the offense. And because of the ruling... So you're relying, I take it, you're relying on his comments, certainly nothing less than 360? Yes. And anywhere else that he underscored that point? I'm just double-checking, Your Honor. The court said that... Page 24 of the appendix and transcript, I'm just looking into there. It seems to me that the guidelines themselves with 360 to life is an appropriate range, so certainly nothing less than 360. And the court did it in the context of talking about the guideline range. And expressly went on to not only the seriousness of the offense, but the need for specific deterrence for this particular defendant. The court also went on and said, however, and which is why the government believes that the court would not, in fact, impose a higher sentence, because it's also spent at length rejecting the government's recommendation for a higher sentence on the basis that the defendant should be released while he was in later to middle age, old age. And in doing that, it expressly took into the account the whole idea of aging out, that there would be a lesser risk of him perpetrating such a vicious crime again when he did get older. This was something the court already took into account and expressly took into account. And the purpose of a remand in this case wouldn't be for the defendant to get another bite at the apple on arguments that were presented, could be presented. The purpose of it would be because the record indicates that the court's decision was impacted in some way by the supervised release mistake in terms of the range. Here, the judge, in fact, gave five years, which would be in the maximum of the potential supervised release range. So all the court could do on remand if it weren't to impose five years would be to impose less. And there's no basis on this court's rationale. It's inconceivable based on this court's rationale that it would, in fact, impose a different prison sentence based on giving a lower supervised release sentence. So unless the court has any further questions, the government would respectfully request that this court vacate the five-year term of supervised release and remand for the limited purpose of resentencing on the length of the term of supervision. So the record is not especially well developed on this issue. And so where Judge Wood is asking for authority for the different spots in the record where the district court made explicit findings such that we can trace the roots and determine what the outcome would be, but for this error, the lack of a developed record on this subject is what begs for a full remand as opposed to a limited remand. We're not going to be limited, of course, to arguments that were already made given that we have Pepper v. United States that says post-incarceration rehabilitation is something the judge should be able to consider when imposing sentence anew. So if there's a resentencing here, Pepper v. United States would allow my client to say his record of achievements and the disciplinary record while in prison would all be things the judge could consider and should consider, must consider, upon resentencing. So if the government is correct that this was a low-end guideline sentence, we would ask that the court just be free to make the determinations as judges are allowed to employ their individual sentencing philosophies to say how this improper decision about the length of supervised release impacted the total sentence that is imposed here. This is not much to ask for. We don't think that it's inconsistent with the Seventh Circuit case law. In fact, we pointed out how the government, in relying on Wiley, has pointed to a case where a judge made the mistake thinking he had a mandatory period of supervision that was incorrect. And this isn't that situation. This is where the judge had a sliding scale, essentially, in front of him and just reached the wrong integers here for purposes of determining what that scale is. So I have nothing else to add. We ask that there be a full remand here after the benefit month. Thank you. Ms. Greenwald, anything further? No, Your Honor. All right. Thanks to both counsel. The case is taken under advisement.